UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| PATRICIA A. WOOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:08-CV-107 |
| | ) | (VARLAN/GUYTON) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14]. Plaintiff Patricia A. Woosley seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On June 5, 2002, the Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423, claiming disability as of August 1, 1998. [Tr. 22]. After her application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On May 28, 2003, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 22]. On June 22, 2004, the ALJ found that Plaintiff was not disabled. The Appeals Council reviewed the ALJ's decision pursuant to 10 C.F.R. § 970 and remanded the case

for evaluation of the extent to which the Plaintiff's mental limitations prevented her from performing light work. [Tr. 37].

After remand, the Plaintiff amended her alleged date of onset to January 1, 2001. A second hearing before the ALJ was held on April 24, 2006. [Tr. 22]. The claimant and a vocational expert testified at the hearing, and the ALJ issued an unfavorable decision on August 24, 2006. [Tr. 29]. The Appeals Council denied the Plaintiff's request for review on January 29, 2008. Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2004.

2. The claimant has not engaged in substanial gainful acitvity since January 1, 2001, the amended onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

3. The claimant has the following severe impairments: narcolepsy, sleep apnea, obesity, breast cancer, back pain, diabetes mellitus, depression, migraine headaches, thyroid goiter, and chronic neuropathy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work; stand/walk/sit for 6 hours out of an 8-hour workday with normal breask. She must avoid unprotected heights and work around moving and dangerous machinary and more than occasional climbing. Due to mental difficulties, the claimant has moderate mental limitations in the ability understand, remember, and carry out

2

detailed instructions; respond appropriately to work pressures in a usual work setting; and respond appropriately with supervisors and coworkers. The claimant has no limitation in the ability to understand, remember, and carry out short, simple instructions; to make judgments on simple work-related decsisions; and to interact appropriately with the public.

6. The claimant can return to her past relevant work (20 CFR 404.1565).

7. The claimant has not been under a "diability," as defined in the Social Security Act, from January 1, 2001 through the date of this decision (20 CFR 404.1520(g)).

[Tr. 22-29].

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

>1. If claimant is doing substantial gainful activity, he is not disabled.
>
>2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
>3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
>4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
>5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is

4

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec. of Health & Human Serv.,46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.    ANALYSIS**

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred: (A) by rejecting the opinions and/or discounting the opinions of treating physicians; (B) in discounting the Plaintiff's credibility; and (C) by finding that the Plaintiff could return to her relevant past work in contradiction to his previous disability determination. [Doc. 12]. The Commissioner, in response, contends substantial evidence supports the ALJ's disability determination. [Doc. 14].

*A.    Weight Accorded to Treating Physicians*

The Plaintiff first contends that the ALJ erred by failing to give the opinions of treating physicians Howard B. McNeeley, M.D., ("Dr. McNeeley"), Thomas Higgins, M.D., ("Dr. Higgins"), and John S. Verble,[1] Ph. D., ("Dr. Verble") controlling weight. [Doc. 12]. Further, the Plaintiff maintains that the ALJ erred by failing to give "good reasons" for discounting the treating

---

[1] In her argument, the Plaintiff mistakenly attributes a statement that she is only capable of doing part-time work to Dr. Higgins, but it was Dr. Verble who made this statement. Out of an abundance of caution, the Court will also address the ALJ's treatment of Dr. Verble's opinion.

5

physicians' opinions, as required by 20 C.F.R. § 404.1527(d)(2).  The Commissioner responds that the ALJ's determination, that the opinions in question were not supported by objective medical evidence and were inconsistent with other substantial evidence of record, is supported by substantial evidence. [Doc. 14].  The Commissioner argues that the ALJ properly explained the weight he gave to the opinions.

If a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927.  The reason for such a rule is clear: the treating physician has had a greater opportunity to examine and observe the patient.  Id.  Furthermore, as a result of the treating physician's duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians.  Id. (citing Schisler v. Heckler, 787 F.2d 76, 85 (2d Cir. 1986)).  But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion.  20 C.F.R.§§ 404.1527(d)(2) and 416.927.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision.  20 C.F.R. §§ 404.1527(d)(2) and 416.927.  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case

record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ, id. (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984)), and accordingly, the ALJ is not bound by the opinions of the treating physician as long as the ALJ sets forth a basis for rejecting it. See Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (citing Fife v. Heckler, 767 F.2d 1427, 1437 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant)).

*1. Dr. McNeeley*

On August 29, 2003, Dr. McNeeley, the Plaintiff's primary care physician, completed a physical abilities form supplied by the Plaintiff. [Tr. 514-15]. Dr. McNeeley found that the Plaintiff could never reach above shoulder level, lift above shoulder level, lift from floor level, balance, bend, or push/pull, and could only occasionally reach, handle, walk, or climb/descend stairs. [Tr. 514]. Dr. McNeeley indicated that the Plaintiff suffered from fatigue, disturbances in her ability to concentrate, anxiety, and depression and that she would need to lie down during the day and need to elevate her feet above her heart. [Tr. 514]. Finally, Dr. McNeeley estimated that the Plaintiff's conditions would cause her to be absent from work more than three times per month. [Tr. 514]. Despite these findings by Dr. McNeeley the ALJ concluded that the Plaintiff could perform light work[2] that allowed her to avoid unprotected heights, dangerous machinery, and more than occasional

---

[2] Light work requires lifting and carrying 20 pounds occasionally and 10 pounds frequently. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). In addition to this requirement, a job is classified as

climbing. [Tr. 25].

The ALJ explained his decision not to give controlling weight to Dr. McNeeley as follows:

> The claimant's physical capacity limitations to light work are considered more than reasonable in light of the fact that the State Agency physician in March 2003 opined that she had no exertional limitations; and they are consistent with the April 2001 and October 2002 medical source statements of the State Agency physicians who limited her to light work (Exhibit 17F [George W. Bounds, M.D.] and 23F [Helena P. Perry, M.D.]). The undersigned has carefully considered the August 2003 medical source statement provided by Dr. McNeeley but finds it incredulous that the physician would find such restrictive physical limitations pertaining to the claimant's ability to function physically due to the fact that such excessive restrictions are not reflected even in Dr. McNeeley's objective medical records and apparently were based for the most part on the subjective complaints of the claimant (Exhibit 30F). Thus, the undersigned can only give this opinion minimal weight and further concludes that Dr. McNeeley apparently is advocating disability on behalf of the claimant rather than basing his assessment of the claimant's physical limitation on the objective medical record.

[Tr. 25]. The ALJ went on to review the law regarding opinions of treating physicians discussed above, and concluded that greater weight should be given to the state agency physicians who limited the Plaintiff to light work "after a thorough review of the entire objective medical evidence of record." [Tr. 25].

Between November 1998 and December 2002, Dr. McNeeley was the Plaintiff's primary care physician. [Tr. 291-328]. The records during this time period show that Dr. McNeeley mainly treated the Plaintiff for sinusitis, common colds, and her diabetes, although occasionally Dr. McNeeley treated other ailments like upper respiratory infections, gastrointestinal issues, and migraine headaches. At the Plaintiff's request, Dr. McNeeley also made referrals for the Plaintiff

---

light work when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm of leg controls." Id.

8

to seek care with specialists for her sleeping disorder, cancer, and psychological issues. In detailed notes from visits since January 1, 2001, Dr. McNeeley found the Plaintiff, at different times, to be suffering from the following ailments, illnesses, or impairments: pneumonia [Tr. 303], upper respiratory infection [Tr. 297, 300, and 302], narcolepsy [Tr. 302], sinusitis [Tr. 299 and 301], diabetes mellitus [Tr. 296, 298, and 300], chronic anxiety [Tr. 300], sleep apnea [Tr. 300], headaches [Tr. 298], diarrhea [Tr. 298], a suspicious lesion [Tr. 298], breast cancer [Tr. 298], bronchitis [Tr. 296], and chest pain [Tr. 295]. However, the pertinent records never indicate that Dr. McNeeley was treating the Plaintiff for any time of back, skeletal, or other impairments that would limit her in the way he indicated when he filled out the disability form in September 2003. [Tr. 514].

After her visit on December 27, 2002, the Plaintiff did not see Dr. McNeeley again until June 2, 2003, when she sought counseling for her diabetes. [Tr. 517]. The Plaintiff returned on August 29, 2003, with the disability form and, for the first time, complaining of joint pain. [Tr. 516]. On September 13, 2003, without any intervening visits, Dr. McNeeley made his findings that the Plaintiff was extremely limited in her ability to physically exert herself. [Tr. 514].

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's conclusion that Dr. McNeeley's opinion was not supported by objective medical evidence and was not consistent with the evidence of record. During the treatment relationship, the Plaintiff never complained of pain or ailments that would limit her exertion, and following the single visit that she did make such complaints, Dr. McNeeley filled out her disability forms to reflect those complaints without any medically acceptable clinical and laboratory diagnostic evidence to support the Plaintiff's subjective allegations. Further, Dr. McNeeley's opinions were directly contradictory to the opinions of other consulting physicians. [Tr. 417 and 459]. Although these physicians saw the

9

Plaintiff just one time, their respective visits with the Plaintiff addressed her physical abilities and, unlike Dr. McNeeley, specifically noted findings regarding the Plaintiff's range of motion, strength, sensation, and gait. [Tr. 459].

As shown in the excerpt above, the ALJ detailed the evidence which led him to conclude that Dr. McNeeley's opinion did not garner controlling weight. He gave both the dates of treatment periods and citations to the exhibits which contained evidence that was inconsistent with Dr. McNeeley's conclusion, and he explained how Dr. McNeeley's opinions regarding physical exertion were inconsistent both with the doctor's own notes and with the opinions of other physicians. Accordingly, the Court finds that the ALJ complied with 20 C.F.R. § 404.1527(d)(2) by giving "good reasons" for discounting Dr. McNeeley's assessment of the Plaintiff's ability to physically exert herself.

2.  *Dr. Higgins*

The Plaintiff notes that in a letter dated February 20, 1995, Dr. Higgins stated that he was concerned about the Plaintiff because she had fallen asleep while driving. [Tr. 514]. In a letter dated December 27, 1994, Dr. Higgins also stated that the Plaintiff had been diagnosed with hypersonmolence after a formal sleep evaluation. [Tr. 268]. Both of these diagnoses are consistent with the ALJ's finding, at step two of the sequential analysis, that the Plaintiff's severe impairments include narcolepsy and sleep apnea, an underlying cause of hypersonmolence.

Accordingly, the Court finds that Dr. Higgin's opinions were consistent with and supported the ALJ's decision. The ALJ did not reject Dr. Higgin's opinion, and the Plaintiff's allegation that the ALJ rejected the opinion without giving good reasons fails.

3.  *Dr. Verble*

The Plaintiff also attributes a September 22, 1997, letter stating that the Plaintiff could only

10

work on a part-time basis to Dr. Higgins, but this letter was in fact written by Dr. Verble. Because the letter was written by Dr. Verble, the Court will assume that the Plaintiff alleged the ALJ erred in discounting Dr. Verble's opinion.

A treating physician is the claimant's own physician, one "who has provided the claimant with medical treatment or evaluation and who has an ongoing treatment relationship with him or her." 20 C.F.R. § 220.5. The record only evidences two visits with Dr. Verble, which took place on or about March 14, 1995, and September 22, 1997. [Tr. 282]. Both of these visits were over three years prior to the alleged onset of the Plaintiff's disability, and the record contains no evidence that Dr. Verble had an "ongoing treatment relationship" with the Plaintiff at the time of the alleged onset of disability.

In addition, only three pages of records were submitted to the ALJ from visits with Dr. Verble: the letter in which he alleges that the Plaintiff can only work part time and two pages of blood work performed in 1995. [Tr. 282-84]. There are no notes describing visits, the Plaintiff's complaints, diagnosed conditions, or treatments. Nonetheless, the ALJ acknowledged that the Plaintiff had been treated by Dr. Verble and other psychiatrists, and ultimately concluded that the Plaintiff's depression constituted a severe impairment. [Tr. 24-26].

Based on the foregoing, the Court finds that Dr. Verble was no longer a treating physician at the alleged onset of the Plaintiff's disability and was accorded weight consistent with the limited records of treatment in the record and with the extended period of time that elapsed between the brief treatment relationship and the alleged onset. Further, the Court finds that the ALJ's conclusion that the Plaintiff's depression was a severe impairment is consistent with Dr. Verble's letter even though the ALJ was not obligated to accord Dr. Verble's opinion significant weight.

11

## B. The ALJ's Credibility Determination

The Plaintiff next avers that the ALJ erred in his assessment of the Plaintiff's credibility. The Plaintiff alleges that the ALJ erred by relying "purely on the medical evidence" and by relying "purely upon [the Plaintiff's] testimony of daily activities," rather than the factors identified in 20 C.F.R. § 404.1529(c) [Doc. 12]. The Commissioner maintains that the ALJ considered all the requisite factors contained in 20 C.F.R. § 404.1529(c) in evaluating the Plaintiff's credibility and complaints of pain. [Doc. 14].

In the present case, the ALJ reviewed the Plaintiff's physical and mental health records and explained the weight accorded to different sources. He went on to state:

> In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, and 96-6p.

[Tr. 26]. The ALJ noted that the Plaintiff alleged that she suffered from migraine headaches, neuropathy, narcolepsy, thyroid goiter nodules, panic attacks, depression, diabetes mellitus, and sleep apnea. The ALJ stated that his analysis of the evidence of record revealed inconsistences between the alleged intensity, persistence, and limiting effect of these impairments, and then spent three, single-spaced pages addressing the specific inconsistencies. [Tr. 26-29].

In weighing the credibility of statements regarding functional limitations and restrictions, the ALJ is to consider: the claimant's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness,

12

and side effects of any medication taken for pain or other symptoms; treatment other than medication, that the claimant has received for the condition; and any other measures taken to relieve the pain or symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vi).  Ultimately, credibility determinations rest with the ALJ.  Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 920 (6th Cir.1987).

The ALJ considered the Plaintiff's daily activities noting that: despite the Plaintiff's complaints of narcolepsy the Plaintiff drove herself to the ALJ hearing [Tr. 26]; despite her assertions of disabling mental and physical impairments, the Plaintiff is able to cook, drive, visit, shop, perform chores, and home-school her daughter [Tr. 29]; and despite her complaints of limitations on her ability to physically exert herself she could regularly lift her forty pound daughter [Tr. 28].  As to treatment, the ALJ noted that the Plaintiff: failed to heed Dr. Higgin's strong recommendations that she use a CPAP machine to address her hypersomnolence and sleep apnea [Tr. 27]; did little to control her insulin and weight to reduce the limiting effect and severity of her diabetes [Tr. 27]; did not seek follow-up treatment for her thyroid goiter [Tr. 29]; and had not sought professional treatment for her psychiatric issues since the alleged year of the onset of disability [Tr. 27].  Based upon the ALJ's discussion of the pertinent factors, the Court finds that the ALJ's credibility determination was supported by substantial evidence.

### C. *The Plaintiff's Ability to Return to Her Past Relevant Work*

In the first decision on the Plaintiff's claim, the ALJ determined, at step four of the sequential analysis, that the Plaintiff was unable to perform any of her past relevant work.  [Tr. 55]. However, the Social Security Administration Appeals Council vacated the ALJ's initial decision and remanded it for reconsideration. [Tr. 37].  In the subsequent decision, the ALJ determined that the Plaintiff was able to return to her past relevant work as an administrative assistant, reservation clerk,

13

buyer assistant, or bookkeeper. [Tr. 29].

The Plaintiff claims that the ALJ erred by not explaining the difference in the relevant past work findings in his first and second decisions. The Plaintiff cites no controlling law to support this allegation of error. [Doc. 12]. The Commissioner responds that after being vacated by the Appeals Council, the ALJ's first decision had no binding effect on the subsequent decision. [Doc. 14].

A decision by an ALJ that is subsequently vacated by the Appeals Council is not a final judgment, and therefore does not trigger the doctrine of res judicata. See Rogers v. Comm'r of Soc. Sec., 225 F.3d 659, *6 (6th Cir. 2000) (Table, No. 99-5650, June 9, 2000). In addition, on the first page of the second decision, the ALJ explicitly stated "The undersigned does not adopt or incorporate by reference any prior findings of fact, conclusions of law or decisional language." [Tr. 22]. As the ALJ warned at the beginning of the second decision, the legal findings contained in the ALJ's previous decision did not bind the ALJ in his decision after remand.

Based on the foregoing, the Court finds that the ALJ was not bound by his prior decision that the Plaintiff was unable to perform any of her past relevant work, and therefore, the ALJ was not required to explain his finding, upon remand, that the Plaintiff was able to perform her past relevant work. Jane Hall, a vocational expert, testified at the hearing that the Plaintiff's exertional and nonexertional limitations would not preclude her from returning to her former work. [Tr. 706-08]. The Court finds that Ms. Hall's testimony along with the other evidence of record provides substantial evidentiary support for the ALJ's decision. Accordingly, the Court concludes that the ALJ's findings at step four of the sequential analysis are supported by substantial evidence.

## V. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to

determine Plaintiff is capable of performing light work that allows her to avoid unprotected heights, moving and dangerous machinery, and more than occasional climbing. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **GRANTED**.

Respectfully submitted,

　　　s/ H. Bruce Guyton　　　
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).